**UNITED STATES BANKRUPTCY COURT**
**FOR THE**
**WESTERN DISTRICT OF KENTUCKY**

| | | | |
|---|---|---|---|
| IN RE: | ) | | |
| | ) | | |
| STEPHANIE DAWN HEERS | ) | CASE NO.: 09-11016(1)(7) | |
| Debtor(s) | ) | | |
| | ) | | |
| STEPHANIE DAWN HEERS | ) | AP NO.: 09-1040 | |
| Plaintiff(s) | ) | | |
| | ) | | |
| vs. | ) | | |
| | ) | | |
| GIBSON REALTY, INC. | ) | | |
| Defendant(s) | ) | | |

---

## MEMORANDUM-OPINION

---

This matter came before the Court for trial on the Complaint of Debtor/Plaintiff Stephanie Dawn Heers ("Debtor") against Defendant Gibson Realty, Inc. ("Gibson"). The Court considered the testimony of the witnesses, the documentary evidence and the legal memoranda of the parties. For the following reasons, the Court will enter Judgment in favor of the Debtor on her Complaint.

### FINDINGS OF FACT

Debtor entered into an Independent Contractor Agreement ("the Agreement") with Gibson Realty, Inc. d/b/a RE/MAX Real Estate Executives to work as a real estate agent effective March 10, 2005.

As part of the Agreement with Gibson, Debtor was to pay her office expenses including office overhead, advertising and other fees. She received a general expense statement at the end of each month. On occasion Gibson would keep a part of Debtor's commission check to pay off her

expense account.  Under the Agreement, Gibson was entitled to keep any past due amounts on Debtor's expense account from her sales commissions.  Despite this term in the Agreement, on several occasions, Gibson turned over a portion of the commission check to Debtor even though she owed outstanding expenses to Gibson.

When Debtor first contracted with Gibson, Debtor entered the RE/MAX Mentoring Program. Debtor was required to pay her own expenses and split commissions earned during the mentoring period with her mentor.  Debtor received 75% and her mentor received 25% of any commission earned.  This percentage was paid to the mentor in return for the mentor teaching her the RE/MAX sales system.

Debtor later became a mentor to a new Gibson agent, Tina Burrell ("Burrell").  Burrell and Debtor agreed that Burrell would pay her own office expenses and they would split any commissions 25% to Debtor and 75% to Burrell on any transaction closed during the mentoring period.  Indeed, Burrell closed one transaction and Debtor received her 25% share of the commission.

In 2008, Debtor entered into an Exclusive Right to Sell Contract for the sale of real property located at 2711 Ashgate Drive, Bowling Green, Kentucky ("the Property") owned by Eric and Jeanette Dorris.

On June 4, 2009, Lori Hunt signed a Real Estate Purchase Contract on the Property with a contingency that Hunt's home located at 2723 Ashgate Drive close successfully.  Eric and Jeanette Dorris rejected this offer and asked Debtor to counter the offer on their behalf.

The Hunts made a second offer also contingent on the sale of their home which Eric and Jeanette Dorris ultimately accepted, along with a concession by Debtor to lower her commission to 4% minus $1,000.  The Hunts signed off on this offer on June 6, 2009 at 12:45 p.m.  An addendum

2

was put on the sales contract on June 6, 2009, which required that if the Hunts' house did not sell until the closing on June 24, 2009, then she would need to rent the house. The parties also provided that a final walk through would occur on June 20, 2009. The Contract was signed on June 6, 2009.

Prior to the offer and acceptance of the Contract for the sale of the Property, Debtor had contacted attorney Amanda Blakeman regarding the filing of a bankruptcy petition. Blakeman prepared a Chapter 7 Voluntary Petition for Debtor which was signed and filed with the Court on June 5, 2009. On Schedule F to her Petition, Debtor listed a debt in the amount of $7,370 to RE/MAX representing the pre-petition office expenses owed to Gibson by Debtor.

On June 11, 2009, Debtor met with Michael Miller, the owner of Gibson, and told him she was having personal financial difficulties. She inquired of him as to what would happen to her pending sales commissions if she left RE/MAX. At that time, she was working on two possible sales. Of those two, only the Property sale ultimately closed. At the time Debtor spoke with Miller she owed $6,051.89 in pre-petition office expenses. Miller told Debtor at that meeting that she could keep any sales commissions and he would not "chase after her" for her outstanding office debt.

On June 24, the closing of the sale of the Property took place at RE/MAX. Christie Turner of RE/MAX was present at the closing. The buyers borrowed a portion of the sale funds and brought a check to the closing in the amount of $40,150.13. The commission earned was $6,960. Debtor gave the check for the commission to Turner at the closing.

On June 25, 2009, Debtor contacted Miller by telephone to request her commission check.

On June 29, 2009, Gibson applied $6,612 of Debtor's commission from the sale of the Property to Debtor's outstanding office expense account. This expense was incurred over a period beginning January 1, 2009 through May 31, 2009.

On June 30, Gibson applied $908.11 of Debtor's commission to Tina Burrell's office expenses owed to RE/MAX.

Despite demands by Debtor's attorney for return of the commission, Miller refused to return the commission check to Debtor. On July 31, 2009, Debtor filed an Emergency Motion for Sanctions in her bankruptcy, Case No. 09-11016, to hold RE/MAX in contempt for violation of the automatic stay of 11 U.S.C. §362.

On August 21, 2009, following a hearing, this Court entered an Order granting Debtor's Motion to Hold RE/MAX in Contempt for violation of the automatic stay and ordered Debtor to submit an Affidavit relating to costs.

On August 25, 2009, Debtor instituted this adversary proceeding to recover her attorney's fees and costs and the sales commission on the Property sale.

On August 27, 2009, Debtor submitted Affidavits from her bankruptcy counsel on fees and costs related to the Motion for Sanctions.

On September 17, 2009, the Court entered an Order awarding Debtor her attorney's fees related to the Motion for Sanctions in the amount of $1,086.00 and ordering payment to be made within 30 days of the date of the Order.

On October 21, 2009, RE/MAX filed a Motion seeking to vacate the Court's Orders of August 31, 2009 and September 17, 2009.

On January 25, 2010, RE/MAX' Motion to Vacate the Orders was denied.

## LEGAL ANALYSIS

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334 and it is a core proceeding under 28 U.S.C. §157(b)(2)(E).

Debtor filed this adversary proceeding alleging conversion and a violation of 11 U.S.C. §362 based on Gibson's retention of Debtor's commission on the sale of the Property and deduction of the office expenses of another RE/MAX agent, Tina Burrell.

This Court entered an Order on August 21, 2009 finding that Gibson violated the automatic stay of 11 U.S.C. §362(a) by withholding Debtor's commission check and charging her for the debt of another realtor. On September 17, 2009, the Court awarded Debtor $1,086 in attorney's fees incurred in connection with the Motion for Sanctions. Neither of those Orders have been vacated. RE/MAX ultimately paid the $1,086 on February 8, 2010.

Given the Court's previous ruling and its consideration of the evidence at trial, there is no need to change the Court's finding on the stay violation. The evidence at trial clearly established that the commission was earned post-petition, yet Gibson applied that commission to a pre-petition debt, the Debtor's office expenses of $6,051.89 and $980 of expenses owed by Burrell. Gibson took this action even though it was promptly notified of the filing of Debtor's Petition and subsequently refused Debtor's counsel's demands for return of the funds.

Under 11 U.S.C. §362(k)(1), an individual injured by any willful violation of the stay shall recover actual damages, including costs and attorney's fees and, in appropriate circumstances, may recover punitive damages. A violation of the stay is considered willful when the creditor had knowledge of the bankruptcy filing and violated the stay by an intentional act. In re Sharon, 234 B.R. 676, 687 (B.A.P. 6th Cir. 1999).

5

The evidence of record shows a willful violation by Gibson. Not only was Gibson notified by the Debtor of her bankruptcy, but it also received notice by the Court and Debtor's attorney. Debtor is entitled to recover her damages, which include the commission of $6,612, the $980 wrongfully withheld from her commission representing expenses of another realtor and her attorney's fees of $14,887.

At trial, Gibson defended this action and claimed Debtor terminated the Agreement in her meeting with Gibson on June 11, 2009. This argument was not raised at any time prior to trial. The Court heard Defendant's argument on this point as a Motion for Directed Verdict after Plaintiff's case at trial. This defense, however, was not based on new evidence presented at trial or evidence that could not have been discovered during pre-trial discovery. Defendant simply did not raise this issue timely or give any prior notice that it would rely on such a defense. The Court will not consider the defense at this late date and finds that the defense was waived. In any event, the Agreement was not terminated on June 11 as Gibson contended. All parties continued to operate as if the Agreement was still in effect. Debtor continued to represent the sellers of the Property and attended the closing along with a RE/MAX representative at its offices. That closing took place well after the alleged termination date of June 11, 2009. Therefore, the Motion for Directed Verdict is denied.

Gibson also contended that Debtor was not owed a commission because it properly recouped the commission that it claimed was earned pre-petition against Debtor's pre-petition debt. Under Kentucky law, a commission is earned by a realtor when the realtor produces a ready, willing and able buyer who can purchase the property on terms prescribed only by obtaining a binding contract on terms that the landowner could enforce upon a breach. Cox v. Venters, 887 S.W.2d 553, (Ky.

App. 1994).  Here, no binding contract was reached until after all terms of the sale were agreed upon and the sale closed.  It was only at this point that the commission was earned.  This Court has no doubt that the commission was earned post-petition.  The Court, therefore, finds no merit in this defense.

## <u>CONCLUSION</u>

For all of the above reasons, the Court will enter the attached Judgment in favor of Debtor/Plaintiff Stephanie Dawn Heers on her Complaint against Defendant Gibson Realty, Inc.

**UNITED STATES BANKRUPTCY COURT**
**FOR THE**
**WESTERN DISTRICT OF KENTUCKY**

|  |  |  |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| STEPHANIE DAWN HEERS | ) | CASE NO.: 09-11016(1)(7) |
| Debtor(s) | ) | |
| | ) | |
| STEPHANIE DAWN HEERS | ) | AP NO.: 09-1040 |
| Plaintiff(s) | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| GIBSON REALTY, INC. | ) | |
| Defendant(s) | ) | |

## <u>JUDGMENT</u>

Pursuant to the attached Memorandum-Opinion entered this date and incorporated herein by reference,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that Judgment is entered in favor of the Plaintiff Stephanie Dawn Heers on her Complaint against Defendant Gibson Realty, Inc. in the amount of $6,612 representing the real estate commission owed, $980 representing the office expenses of Tina Burrell and $14,887 representing attorney's fees and expenses.

This is a final and appealable Judgment. There is no just reason for delay.